IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff | |
| v. | CIVIL NO.: 07-1487 (ADC/MEL) |
| ONE URBAN LOT LOCATED AT MANSIONES DEL CARIBE, HUMACAO, PUERTO RICO, | |
| Defendant. | |

**REPORT AND RECOMMENDATION**

**I.  PROCEDURAL BACKGROUND**

On June 7, 2007, the government filed a verified complaint for forfeiture *in rem* of One Urban Lot located at Mansiones del Caribe, Número 12-AA, Barrio Río Abajo, Puerto Rico ("forfeiture property"). (Docket 1.) On September 18, 2007, claimants Carlos Señeriz-Gómez ("Señeriz-Gómez") and Eileen Padró-Rullán ("Padró-Rullán") filed a motion for an extension of time until October 15, 2007, to file an answer to the verified complaint. (Docket 11.) Given that claimants had not filed an answer by February 7, 2008, the court deemed the motion for an extension of time moot. (See Docket 13.) On February 25, 2009, the government filed a motion for default decree of forfeiture. (Docket 14.) On March 9, 2008, claimants filed an answer to the verified complaint.[1] (Docket 15.) On March 12, 2008, claimants filed a motion for an extension of time to respond to the motion for default decree of forfeiture. (Docket 16.) On March 13, 2008, the court granted the parties until March 30, 2008, to report, in writing, any settlement and the status of any settlement negotiations. (Docket 17.) On April 7, 2008, the court denied the government's motion

---

[1]Although claimants' answer is styled as a verified answer, there is nothing apart from its title to indicate that it is, in fact, verified. (See Docket 15.)

United States of America v. One Urban Lot Located at Mansiones del Caribe, Humacao, Puerto Rico
Civil No. 07-1487 (ADC/MEL)
Report and Recommendation

for default decree of forfeiture. (Docket 18.)

On November 10, 2008, the government filed a second motion for default decree of forfeiture. (Docket 21.) Facing a motion that had been standing unopposed for more than six months, on May 21, 2009, the court entered a default decree of forfeiture. (Docket 23.) On June 12, 2009, claimants filed a motion to set aside the default decree of forfeiture. (Docket 25.) On June 15, 2009, the court referred the motion to set aside the default decree of forfeiture to the undersigned for report and recommendation. (Docket 27.)

On August 20, 2009, an evidentiary hearing was held regarding the motion to set aside the default decree of forfeiture. (Docket 40.) Prior to the evidentiary hearing, claimants' counsel filed an *ex parte* motion regarding the motion to set aside the default decree of forfeiture. (Docket 26.) At the evidentiary hearing, the court offered claimants' counsel an opportunity to present, under seal and outside the presence of witnesses testifying at the evidentiary hearing, the arguments contained in the *ex parte* motion for consideration in this report and recommendation. Claimants' counsel declined to discuss the contents of the *ex parte* motion in the presence of opposing counsel.[2]

## II.  FACTUAL BACKGROUND

The following factual background is taken from evidence and testimony presented at the evidentiary hearing: Señeriz-Gómez and Padró-Rullán claim ownership of the forfeiture property. Claimant Señeriz-Gómez was convicted pursuant to a plea agreement executed October 11, 2007, on one count of knowingly and intentionally possessing with intent to distribute fifty grams or more of a mixture or substance containing a detectable amount of cocaine base within one thousand feet

---

[2]The government clarified during the evidentiary hearing that it is not seeking to forfeit any payments made by Padró-Rullán after Señeriz-Gómez was convicted in case 07-156 (ADC).

United States of America v. One Urban Lot Located at Mansiones del Caribe, Humacao, Puerto Rico
Civil No. 07-1487 (ADC/MEL)
Report and Recommendation

of the real property comprising a housing facility owned by a public housing authority or a public elementary school. (Docket 41-2 at 2.) Señeriz-Gómez had been previously convicted of narcotics charges and served a prison sentence from 2000-2002. His wife, Padró-Rullán, claims that she was aware of his previous conviction, but did not know that the conviction was related to narcotics. Following Señeriz-Gómez's conviction, his wife, Padró-Rullán, and her children continued to live in the forfeiture property.

The estimated price of the forfeiture property when claimants purchased it was $190,000. Padró-Rullán stated that the forfeiture property was purchased using $150,000 in proceeds from the sale of their previous house, with the remaining $40,000 secured by a mortgage. With regard to their previous house, Padró-Rullán stated that the land on which it was built was given to claimants by Señeriz-Gómez's father, Señeriz-Gómez performed the labor necessary to build the house, and she purchased materials.

When asked if her husband had a legitimate source of income, Padró-Rullán stated that her husband had a remodeling/construction business. She testified that Señeriz-Gómez did not have an office for his remodeling/construction business. She met some of his clients, but did not specifically know of any companies contracting with her husband's business. Padró-Rullán stated that a bank account did exist for the company, but it has since closed and she never had signature authority over the account. She stated that she did not know how much money her husband's remodeling/construction business made.

Drug Enforcement Administration ("DEA") agent José Betancourt ("Betancourt") testifed as to his investigation of Señeriz-Gómez, which ultimately lead to his arrest and conviction.

United States of America v. One Urban Lot Located at Mansiones del Caribe, Humacao, Puerto Rico
Civil No. 07-1487 (ADC/MEL)
Report and Recommendation

Betancourt stated that he received information that Señeriz-Gómez had been a drug trafficker since 2000. Betancourt further testified that his investigation yielded no evidence that Señeriz-Gómez actually had a remodeling/construction business. Betancourt stated that Señeriz-Gómez's income was derived from his ownership of a drug point in a public housing project, which an expert had stated would typically generate over $100,000 per year.[3] Betancourt also stated that confidential sources had informed him that Padró-Rullán was aware of her husband's drug-related business, having accompanied Señeriz-Gómez while delivering drugs. Betancourt testified that over the two year investigation (2004-2006), the DEA had made undercover purchases of narcotics from Señeriz-Gómez totaling $3,000. Betancourt admitted that other than this amount, he had no specific knowledge of any other income for Señeriz-Gómez and no evidence that the forfeiture property was purchased with illegitimate income. With regard to the search of the forfeiture property during the investigation that led to Señeriz-Gómez's conviction, Padró-Rullán stated her husband told her that the search was a "confusion."

### III.   LEGAL ANALYSIS

####    A.   Fed. R. Civ. P. 60(b) Standard

In civil forfeiture proceedings, a default decree of forfeiture acts as a final judgment by default under Fed. R. Civ. P. 55(b)(2) ("Rule 55(b)(2)"). United States v. $23,000 in U.S. Currency, 356 F.3d 157, 164 (1st Cir. 2004). Final judgments under Rule 55(b)(2) may only be set aside pursuant to Fed. R. Civ. P. 60(b) ("Rule 60(b)"). Id. Rule 60(b) allows a court to set aside a final

---

[3] Betancourt admitted on cross examination that the expert had not testified specifically as to the revenues of the drug point that belonged to Señeriz-Gómez. It is also unclear from Betancourt's testimony whether the $100,000 figure refers to the total combined amount generated by all the drug points in a single housing project, or whether $100,000 is the average revenue of a typical drug point in the housing project where Señeriz-Gómez operated.

4

United States of America v. One Urban Lot Located at Mansiones del Caribe, Humacao, Puerto Rico
Civil No. 07-1487 (ADC/MEL)
Report and Recommendation

judgment in a limited number of circumstances. In order to gain relief under Rule 60(b), the moving party must not only show extraordinary circumstances justifying relief, but must also establish that setting aside a default judgment would not be a pointless exercise by showing that they have a potentially meritorious claim or defense. Teamsters, Chaffeurs, Warehousemen and Helpers Union, Local No. 59 v. Superline Transp. Co., 953 F.2d 17, 20 (1st Cir. 1992).

Claimants challenge the default decree of forfeiture pursuant to the subsection (6) of Rule 60(b), which provides for "any other reason that justifies relief." In order to prevail under Rule 60(b)(6), claimants "must show extraordinary circumstances suggesting that the party is faultless in the delay." Blanchard v. Cortés-Molina, 453 F.3d 40, 44 (1st Cir. 2006) (citing Pioneer Inc. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 393 (1993)). "If a party is 'partly to blame,' Rule 60(b)(6) relief is not available to that party; instead, 'relief must be sought within one year under subsection (1) and the party's neglect must be excusable.'" Claremont Flock Corp. v. Alm, 281 F.3d 297, 299 (1st Cir. 2002) (citing Pioneer Inc. Servs. Co., 507 U.S. at 393).

Rule 60(b)(1) provides relief for "mistake, inadvertence, surprise, or excusable neglect." Pursuant to this subsection, a court may "accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." Pioneer Inc. Servs. Co., 507 U.S. at 388. Application of subsection (1) is not appropriate, however, for "'ignorance of the rules, or mistakes construing the rules . . . .'" $23,000 in U.S. Currency, 356 F.3d at 164 (citing Pioneer Inc. Servs. Co., 507 U.S. at 388). In order to determine whether neglect is excusable, a court must "tak[e] account of all relevant circumstances surrounding the party's omission . . . includ[ing] . . . the danger of prejudice to the [nonmoving party], the length of the delay, including whether it

United States of America v. One Urban Lot Located at Mansiones del Caribe, Humacao, Puerto Rico
Civil No. 07-1487 (ADC/MEL)
Report and Recommendation

was within the reasonable control of the movant, and whether the movant acted in good faith. Pioneer Inc. Servs. Co., 507 U.S. at 395. Although many factors must be considered, the reason for the delay is "'critical to the inquiry.'" $23,000 in U.S. Currency, 356 F.3d at 164 (citing Hosp. del Maestro v. Nat'l Labor Relations Bd., 263 F.3d 173, 175 (1st Cir. 2001)).

### B.     Grounds for Setting Aside the Default Judgment

Claimants have not provided sufficient grounds to justify relief under Rule 60(b). The record contains two lengthy delays in filing on the part of the claimants. The first is the almost six month period between requesting an extension of time to file an answer to the complaint and actually filing said answer. (See Docket 11; Docket 15.) The second is the six month period between the government's filing of the second motion to enter a default decree of forfeiture and any response from claimants. (See Docket 21; Docket 25.)

Rule 60(b)(6) is inapplicable to claimants under the circumstances of the case. Claimants have not presented any argument that they were faultless in either six month delay. In the motion to set aside the default decree of forfeiture, claimants' counsel argues that relief from the default decree should be granted, even if for reasons of his own "gross neglect." (Docket 25 at 4.) Although there is no express statement of claimants' negligence independent from the negligence of their counsel, "clients must be held accountable for the acts and omissions of their attorneys." Pioneer Inv. Servs. Co., 507 U.S. at 397. Claimants "voluntarily chose this attorney as [their] representative in the action, and [they] cannot now avoid the consequences of the acts or omissions of this freely selected agent." Id.

Rule 60(b)(1) is likewise inapplicable because claimants failed to show that their negligence

6

was excusable. The length of the delay, claimants' control over the delay, and the reason for the delay motivate in favor of denying the motion to set aside the default decree of forfeiture.

Claimants have not proffered circumstances that justify a six month period of inactivity in the face of the second motion for default decree of forfeiture. In their motion to set aside the default decree of forfeiture, claimants cite two reasons for their lack of response in the civil forfeiture proceedings. (See Docket 25 at 2-3.) First, they claim that they were not notified of any procedural defects in their filings. (Docket 25 at 1-2.) Second, claimants state that attempts at negotiation with the government ultimately failed. (Docket 25 at 2.) Claimants were, however, notified of the second motion for entry of a default decree of forfeiture, which alluded to defects in their claims, and never responded to the same. (See Docket 21 at 3-5.) Claimants also fail to explain why a breakdown in negotiations with the government prevented them from responding to the second motion for a default decree of forfeiture. (See Docket 25.) Furthermore, neither reason indicates that claimants did not have control over the delay. Therefore, claimants have failed to explain their negligence in a manner sufficient to invoke the relief provided by Rule 60(b)(1).

Claimants also argue that the default decree of forfeiture should not have been entered because they filed an answer to the complaint. (Docket 25 at 2.) In civil forfeiture proceedings, however, the procedural burden on a claimant after the filing of the complaint is to file a verified claim, followed by an answer. See United States v. One Urban Lot Located at 1 Street A-1, Valparaiso, Bayamón, P. R., 885 F.2d 994, 999-1000 (1st Cir. 1989); $23,000 in United States Currency, 356 F.3d at 166-67. Although the First Circuit has allowed a verified answer to serve as a both a verified claim and an answer for the purposes of responding to a civil forfeiture complaint,

United States of America v. One Urban Lot Located at Mansiones del Caribe, Humacao, Puerto Rico
Civil No. 07-1487 (ADC/MEL)
Report and Recommendation

claimants in the present case have not filed the verified answer necessary to invoke this exception to the relevant procedural requirements. See id. Even if claimants were to argue for Rule 60(b)(1) relief on the basis of their failure to follow the proper procedure in a civil forfeiture proceeding, subsection (1) is not applicable for "'ignorance of the rules, or mistakes construing the rules . . . .'" $23,000 in United States Currency, 356 F.3d at 164 (citing Pioneer Inc. Servs. Co., 507 U.S. at 388). Therefore, claimants' motion to set aside the default decree of forfeiture should be denied.[4]

### C.   Due Process Concerns

Claimants argued at the evidentiary hearing that they were not given due process of law when the default decree of forfeiture was entered. "Due process requires the government to afford an owner 'notice and an opportunity to be heard' before civilly forfeiting his [or her] property . . . ." Whiting v. United States, 231 F.3d 70, 76 (1st Cir. 2000) (citing United States v. James Daniel Good Real Prop., 510 U.S. 43, 46 (1993)).  The government must provide "'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" Id. (citing Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)).

---

[4]Even though claimants' counsel has filed an *ex parte* motion, (Docket 26), raising some serious matters that are relevant to the issues at hand and the court gave him the opportunity to address the matters raised in said motion in a sealed courtroom and without anybody present but for the court and plaintiff's counsel, claimants' counsel chose not to elaborate on the contents of said motion. The court advised counsel that it would respect his decision not to address the contents of the *ex parte* motion, but that it would not be able to take said motion into account for purposes of rendering this decision. If the court were to do so, and find for claimants, then the court would be for all practical purposes setting aside the default decree of forfeiture without explanation to plaintiff, without giving the government an opportunity to evaluate and respond to the arguments in said motion, and without giving the court an opportunity to clarify any questions regarding the *ex parte* motion. Although the court respects counsel's request to maintain the contents of said motion *ex parte*, due process considerations require that opposing counsel be given an opportunity to respond, particularly when the remedy sought requires a showing of extraordinary circumstances or justification to set aside a default decree of forfeiture.

United States of America v. One Urban Lot Located at Mansiones del Caribe, Humacao, Puerto Rico
Civil No. 07-1487 (ADC/MEL)
Report and Recommendation

A review of the record in the present case indicates that claimants had actual notice of the civil forfeiture proceedings more than a year prior to the entry of the default decree of forfeiture. (See Docket 11.) The record also indicates that the government took efforts to "apprise interested parties" of the civil forfeiture proceedings through service on the forfeiture property and the Humacao Property Registrar, as well as publishing notice of the proceedings in El Nuevo Día newspaper on three separate occasions. (Docket 6; Docket 7; Docket 14.) After demonstrating actual notice of the proceedings by filing a motion for an extension of time to answer, claimants had ample opportunity to respond to either of the government's motions for entry of a default decree of forfeiture. (See Docket 14; Docket 21; Docket 23.) Simply because claimants failed to take advantage of this opportunity after receiving notice of the proceedings does not mean that they were deprived of such notice and opportunity. See Whiting, 231 F.3d at 76. As unfortunate as the consequences of the default decree may be for claimants, there is no indication that they were deprived of due process of law.

### D. Potentially Meritorious Defense

Claimant Padró-Rullán presented some evidence regarding her asserted defense as an "innocent owner" of the forfeiture property. (See Docket 25 at 2.) In civil forfeiture actions, the government has the initial burden to "demonstrat[e] probable cause to support a belief that a nexus existed between the real estate and some specified illegal activity sufficient to justify forfeiture." United States v. 15 Bosworth Street, 236 F.3d 50, 54 (1st Cir. 2001). If the government carries this burden, the claimant must show that "either (1) . . . the property was not in fact used for the specified illegal activity, or (2) . . . [the claimant] neither knew about, nor consented to, the illicit activity." Id. (citing United States v. One Parcel of Real Property (Great Harbor Neck, New Shoreham, R.I.),

9

United States of America v. One Urban Lot Located at Mansiones del Caribe, Humacao, Puerto Rico
Civil No. 07-1487 (ADC/MEL)
Report and Recommendation

960 F.2d 200, 204 (1st Cir. 1992). The latter option, often referred to as the "innocent owner" defense, is an affirmative defense. Id. (citing United States v. One Parcel of Property (121 Allen Pl.), 75 F.3d 118, 121 (2d Cir. 1996). "Thus, the claimant bears the burden of proving the absence of knowledge or consent be a preponderance of the evidence." Id. (citing United States v. One Lot of U.S. Currency ($68,000), 927 F.2d 30, 32 (1st Cir. 1991).

There is no controversy that Padró-Rullán has an ownership interest in the forfeiture property. At the evidentiary hearing, Padró-Rullán provided testimony that she had little knowledge of her husband's remodeling/construction business, no knowledge of the nature of his previous drug conviction, and no knowledge of any illegitimate drug income. Padró-Rullán also testified that she only knew of legitimate sources for the funds used to purchase the forfeiture property. The only evidence provided by the government as to the Padró-Rullán's knowledge of Señeriz-Gómez's drug activity is Betancourt's testimony that a confidential source informed him that Padró-Rullán, at least once, accompanied Señeriz-Gómez on drug deliveries, an allegation denied by Padró-Rullán during the evidentiary hearing. Other than that, the government presented testimony of $3,000 of controlled purchases involving Señeriz-Gómez (an insignificant amount relative to the $190,000 purchase price of the second house), no specific evidence as to how much Señeriz-Gómez's drug point was actually making a year, and no evidence that the second house which the government seeks to forfeit was actually purchased with drug proceeds. Moreover, the little testimony presented at the evidentiary hearing regarding a search of the house is at best inconclusive.[5]

---

[5]Although there were a few remarks during Padró-Rullán's testimony as to a search warrant executed, the witness could not recall if drug paraphernalia was seized. Padró-Rullán did acknowledge that some cash was found in the house, part of which belonged to her mother. Agent Betancourt, however, did not offer additional information as to the search of the property that the government seeks to forfeit.

United States of America v. One Urban Lot Located at Mansiones del Caribe, Humacao, Puerto Rico
Civil No. 07-1487 (ADC/MEL)
Report and Recommendation

Based on the scant evidence and testimony presented at the evidentiary hearing, there is at least some potential that Padró-Rullán's could establish by a preponderance of the evidence that she "neither knew about, nor consented to, the illicit activity" in the residence subject to the forfeiture proceedings pending before the court. See 15 Bosworth Street, 236 F.3d at 54. Nevertheless, no additional evidence was presented by claimants to show that the proceeds from the sale of the first house were used to buy the second one and that the first house was built with legitimately earned money, such as the amount of materials purchased by Padró-Rullán, the value of the land of the first house, and whether Señeriz-Gómez's father indeed provided the money for that land.

### IV. CONCLUSION

In view that claimants have not met their burden under Fed. R. Civ. P. 60(b), the motion to set aside the default decree of forfeiture, (Docket 25), should be DENIED. Although there appears to be some potential for an "innocent owner" defense, being the case that the undersigned is not taking into account the matters raised in claimants' counsel's *ex parte* motion for the reasons stated above, the arguments on the record are insufficient to justify the extraordinary remedy sought.

IT IS SO RECOMMENDED.

The parties have ten (10) days to file any objections to this report and recommendation. Failure to file same within the specified time waives the right to appeal this order. Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); United States v. Valencia, 792 F.2d 4, 6-7 (1st Cir.1986).

In San Juan, Puerto Rico, this 2nd day of September, 2009.

s/Marcos E. López
U.S. MAGISTRATE JUDGE